EFFIE I. REEVES, AN INFANT, BY HER NEXT FRIEND, CHARLES W. REEVES, AND CHARLES W. REEVES, IN HIS OWN RIGHT, PLAINTIFFS-RESPONDENTS, v. ALBERT PROSSER AND WILLIAM COWARD, TRADING AS COWARD BROTHERS, DEFENDANTS; ALBERT PROSSER, APPELLANT.

PETER McHUGH, JR., AN INFANT BY HIS FATHER AND NEXT FRIEND, PETER McHUGH, SR., AND PETER McHUGH, SR., IN HIS OWN RIGHT, PLAINTIFFS-RESPONDENTS, v. ALBERT PROSSER AND WILLIAM COWARD, TRADING AS COWARD BROTHERS, DEFENDANTS; ALBERT PROSSER, APPELLANT.

Argued May 27, 1932—Decided October 17, 1932.

For the appellant, *Thompson & Hanstein.*

For the respondents, *Solve Tuso.*

The opinion of the court was delivered by

WELLS, J. The above two cases were tried together in the Common Pleas Court of Cumberland county and resulted in

judgments in favor of the two plaintiffs against the defendant Albert Prosser, and in directed verdicts in favor of the defendant William Coward.

The defendant Albert Prosser appealed to the Supreme Court where the judgments were sustained and he takes this appeal to review the judgment of the. Supreme Court.

The suits arose out of an accident which occurred about nine-thirty o'clock on the night of February 21st, 1929, while the infant plaintiffs were riding upon sleds attached to the truck of the defendant Coward.

The sled upon which the infant plaintiffs were riding was being drawn in a southerly direction upon the Malaga road, which is the main highway running from Vineland to Philadelphia.

Prosser was driving his car in the opposite direction and immediately after passing the truck, collided with the infant plaintiffs upon their sled.

The defendant Coward, the owner of the truck, was exonerated from all responsibility because it appeared from the testimony that the driver of the truck, Piccolo, had exceeded his authority in inviting the children to take a ride behind the defendant Coward's truck.

The appellant Prosser moved for a nonsuit which was denied and a direction of a verdict, which was also denied, both motions being based upon the ground that there was no proof of negligence on the part of appellant and that there was proof of contributory negligence on the part of the infant plaintiffs. These are the only trial rulings challenged on this appeal.

The plaintiffs, Effie Reeves, fourteen years of age, and Peter McHugh, Jr., fifteen years of age, had lived for many years on the Malaga road and were well acquainted with the fact that it was a very much traveled roadway. They had been warned by their parents of the danger of sledding upon the road in question.

On the night of the accident they had been coasting with other children upon their sleds upon a road in the vicinity and they stopped on their way home at a gas station where

Piccolo, the driver of the defendant Coward's truck, invited them to hook their seds on back of his truck for a ride. At first they declined but finally were persuaded by Piccolo to accept his invitation.

The infant plaintiffs were riding on the first of two sleds tied to the right rear of the Coward truck by a rope about twelve feet long. The Malaga road was covered with snow, part of which had been removed, making a path passable for two cars and causing the snow that was so removed from the center of the road to be backed up on each side to a depth of about one foot.

It was a bright moonlight night. This fact in connection with the snow covering the ground made it possible for one to see objects for a distance of nine hundred feet.

The place where the accident occurred was in the open country.

The evidence produced by the plaintiffs was to the effect that the Coward truck was pulling the infant plaintiffs along the highway at a high rate of speed on plaintiffs' right side of the road and that their sled never left the right side of the road, and that the lights of appellant's automobile were visible to the children four hundred or five hundred feet away and that the children were screaming with fright.

Peter McHugh, Sr., the father of one of the infant plaintiffs, testified that he heard the screaming or "hollering" of the children from his home one hundred and fifty feet distant and that he heard the brakes of appellant's car screech for six or seven seconds during which it traveled over a space of about one hundred and fifty feet.

The Supreme Court said that the evidence tended to show that persons in the neighborhood (the only person was McHugh) heard the screeching of the brakes of appellant's car for six or seven seconds and over a space of about one hundred and fifty feet as it *came on to the point of the accident,* and that the appellant's car was travelling, as variously said, "thirty-five miles an hour," "awful fast," "very fast."

The Supreme Court thought it was therefore permissible for the jury to conclude that the appellant knew or in the

exercise of reasonable care, ought to have known of the presence of the children following the Coward truck on their sleds. There was evidence tending to show that as appellant's automobile reached a point opposite the Coward truck it turned to its left and cut in across the center of the highway, striking the sled upon which the infant plaintiffs were riding and injuring them. This was denied by appellant.

He said that he neither saw nor heard the children until he was opposite the truck, when they suddenly darted out from back of the truck over to appellant's side of the road and they were about six feet away, when he first saw them and though he swerved his car sharply to the right, the sled ran into his car. When the car stopped it was almost completely off the road to the right and one child was under the car and the other just back of it.

The Supreme Court said that the screeching of the brakes of appellant's car before reaching the truck indicated that appellant saw the children one hundred and fifty feet away and because of the speed at which he was traveling and the road conditions, he was unable to control his car as it passed the truck and that this was evidence of negligence requiring the submission of that question to the jury.

Our examination of the evidence leads us to the conclusion that the screeching of the brakes began not before, but at or about the time the appellant's automobile was passing the truck, and while we differ as to the finding of fact on this particular point, and the inferences to be drawn therefrom, yet inasmuch as we have arrived at the same conclusion reached by the Supreme Court that there was evidence in the case of the appellant's negligence (which we shall presently point out) which presented a question for the jury to determine, it is unimportant that there is a difference in the finding of facts, and it is likewise unnecessary to decide whether or not the Supreme Court was right in saying that under the facts and circumstances of this case it was permissible for the jury to conclude that the appellant knew or ought to have known of the presence of the children following the Coward truck on their sleds.

The evidence presented on behalf of the plaintiffs tended to show that the turning in by the appellant from his right half of the highway to the left of the center thereof was the proximate cause of the accident.

Section 5, article 8 of chapter 281, *Pamph. L.* 1928, known as the "Traffic act," provides that—

"Upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway—unless it is impracticable to travel on such side of the highway, and except when overtaking and passing other vehicles," &c.

There was evidence in the case that the appellant Prosser disobeyed this provision of the Traffic act, and that had he continued to drive his car upon the right half of the highway the accident would not have occurred.

Mr. Justice Garrison, in discussing the doctrine of "discoverable danger," in *Evers* v. *Davis,* 86 *N. J. L.* 196; 90 *Atl. Rep.* 677, speaking for this court said:

"Upon common law principles, therefore, when the legislature has by public statute established a certain standard of conduct in order to prevent a danger that it foresaw, it has in this regard forewarned the 'ordinary prudent man,' and through him the defendant in a civil action, whose conduct must always coincide with this common law criterion. Such danger, therefore, does not have to be proved by the plaintiff, since there is no longer room for a reasonable difference of opinion, for by his breach of the statute the defendant, through his common law conscience, is charged with knowledge that if injury ensues he will have acted at his peril.

"The court, therefore, should so instruct the jury, whether such instruction be couched in the terms of the defendant's duty to perform or of his culpability for neglect, or of his liability for the result of his action, or inaction as the case may be; and thus upon common law principles the plaintiff in an action of negligence obtains the benefit of the statute if he be one of the class for whose benefit it was enacted, and the breach of such statute was the efficient cause of the injury of which he complains.

"A defendant, although he cannot be heard to say that it was not his duty to obey, the statute, may show what he did in his effort to obey it, leaving it to the jury to say whether such effort was what a reasonably prudent person would have done in view of the statute."

The court, in *Winch* v. *Johnson,* 92 *N. J. L.* 219, held, that the fact that the driver of an automobile failed to observe the provisions of the Traffic act does not *per se* present the basis for the direction of a verdict against the defendant, such fact being but one factor in the situation, which considered as a whole presents a jury question, as to the defendant's negligence under all the circumstances. See, also, *Healey* v. *Braested,* 98 *Id.* 520.

The question, therefore, in the case *sub judice,* was one for the jury, whether under all the circumstances, including the failure to observe the provisions of the Traffic act, the accident arose by reason of the appellant's negligence.

But appellant contends that even if he had been guilty of negligence, the plaintiffs should have been nonsuited or a verdict directed against them because it clearly appears in the case that they were as a matter of law contributorily negligent.

The Supreme Court held that with respect to the alleged contributory negligence of the infant plaintiffs that the question was properly submitted to the jury, considering more particularly the age of the infants, citing *Solomon* v. *Public Service Railway Co.,* 87 *N. J. L.* 284; *David, Administrator,* v. *West Jersey and Seashore Railroad Co.,* 84 *Id.* 685.

Counsel for the respective parties have submitted no cases nor do we find any decided by this court where the facts are on all fours with the case now before us.

The legislature has passed legislation making it unlawful for the rider of a bicycle or a person on roller skates to hold fast to or hitch onto trolley cars or other vehicles. *Pamph. L.* 1928, *ch.* 281, *art.* 3, § 5. It is also unlawful for any person to drive any horse or horses attached to any sleigh or sled on any highway unless there shall be a sufficient number of bells attached to the harness of such horse or horses

to give warning of their approach. *Pamph. L.* 1928, *ch.* 281, *art.* 4, § 1.

It may well be that in this day of congested automobile traffic on the main highways of our state, the legislature should enact legislation making it unlawful to attach a sled to a motor vehicle for the purpose of being drawn along a public highway, and thereby declare such an act to be a public nuisance. But in the absence of such legislation, we cannot say that such an act constitutes a public nuisance as will bar a child hitch-hiking on a sled behind a motor vehicle, as in the instant case, from recovery for injuries received in a collision with an automobile negligently driven.

In the case of *Lynch* v. *Public Service Corp.,* 82 *N. J. L.* 712, this court held that coasting upon a public street was not an illegal act so as to constitute a public nuisance. Public highways, said the court, are intended for pleasure uses as well as business uses. Judge Vroom, in delivering the opinion for this court, went so far as to say, "if it be true that the plaintiff was engaged in a sport, which, when indulged in in the public streets amounted to a public nuisance, yet we think that if her injuries resulted from the negligence of the motorman and not from any negligence on her part, she was entitled to recover."

The question of negligence of the motorman and the contributory negligence of plaintiff in that case was held by this court to be clearly a question for the jury to decide.

While the Lynch case and the instant case differ widely in many respects, yet the principles enunciated therein upon the question of contributory negligence are applicable to the case now under consideration.

In the Lynch case the court said: "The granting of the nonsuit at the close of the plaintiffs' case could be justified only upon the ground that the act of the plaintiff was a public nuisance, in fact, a nuisance *per se,* the existence or non-existence of which is admittedly a question of law purely. If the act was not a public nuisance, then whether or not the particular thing, act, omission or use of property complained of was in fact a nuisance was to be determined by the jury."

We are of the opinion that the question of the negligence of appellant and the contributory negligence of the plaintiffs was for the jury and that the rulings of the trial court refusing the motions to nonsuit and to direct a verdict were not error, and that the judgment of the Supreme Court sustaining the action of the trial court should be affirmed.

*For affirmance*—THE CHANCELLOR, PARKER, CASE, BO-DINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 11.

*For reversal*—None.